**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FATHI ELLTAIF SAAD ELLDAKLI; NAGLLA KOUNI SALEM GHADAR; HADIL FATHI EL ELLDAKLI; RANIM FATHI EL ELLDAKLI; TAHA FATHI EL ELLDAKLI, <br><br> Plaintiffs, <br> v. <br><br> MERRICK GARLAND, U.S. Attorney General; U.S. DEPT. OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; UR M. JADDOU, Director, U.S. Citizenship and Immigration Services; GREGORY A. RICHARDSON, Director, USCIS Texas Service Center; WALLACE L. CARROLL, Houston Field Office Director; UNITED STATES OF AMERICA, <br><br> Defendants | No. _4:21-cv-3320_____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER ADMINISTRATIVE PROCEDURES ACT** |

## I.  INTRODUCTION

1.  This is an action brought pursuant to Section 10b of the Administrative

Procedure Act, 5 U.S.C. § 702, *et seq.*, seeking to hold unlawful and set aside the

September 4, 2019 decision of the Texas Service Center ("TSC") of the U.S.

Citizenship & Immigration Services ("USCIS") to deny Form I-140, Petition for Nonimmigrant Worker ("I-140 petition" or "the petition"), filed by Plaintiff Dr. Fathi Elltaif Saad Elldakli ("Plaintiff" or "Dr. Elldakli") on his own behalf seeking to be classified as a member of the professions holding an advanced degree who qualifies to seek a waiver of the labor certification requirement because his endeavor is in the national interest ("National Interest Waiver" or "NIW").

2.    USCIS' decision to deny the I-140 petition was made on faulty grounds where it failed to consider the substantial evidence submitted with the petition which established each element for eligibility of a national interest waiver under the standards prescribed by *Matter of Dhanasar*, 26 I&N Dec. 884 (AAO 2016), the precedent decision of the USCIS Administrative Appeals Office on NIW, and under the relevant statutory and regulatory framework. Due to the fact that this denial was arbitrary, capricious, and not in accordance with the law, Plaintiff seeks injunctive and declaratory relief to compel the Defendants to vacate the denial and approve the petition.

3.    This action also seeks to compel Defendant USCIS to withdraw its notice of intent to rescind Plaintiffs' lawful permanent resident status which it granted more than two years ago. USCIS approved this family's applications for permanent residency after a routine interview and a year later issued a notice of its

2

intent to rescind their status, alleging that it had been granted in error because it was granted before the I-140 was approved.

4.      Defendants should also be enjoined from revoking Plaintiffs' permanent resident status on which they have substantially relied for almost three years for their legal residence in the United States which allows them to live and work here and pay their taxes. Plaintiffs have resided legally in the United States since their initial legal entry into the country more than a decade ago. They are a family unit who left Libya in the middle of the civil war in 2011 and do not wish to go back.

5.      Plaintiffs also request that this Court order Defendants to reopen the I-485 applications in the event that this Court ultimately finds that the I-140 petition was not denied in error.

6.      Plaintiff Dr. Elldakli is an asset to the U.S. oil and gas industry and his contribution to this industry has already been demonstrated and utilized or in plans to be utilized by other scholars in his field, as well as major oil and gas companies like the Schlumberger Corporation. USCIS has already found that his endeavor is of substantial merit and national importance and evidence on the record also demonstrates that he is well positioned to advance that endeavor, as well as that on balance it would be beneficial for the United States to waive the requirements of a job offer, and thus, a labor certification.

3

## II.    PARTIES

7.     Plaintiff, Dr. Fathi Elltaif Saad Elldakli, is a scholar with two master's degree and a Ph.D. in Petroleum Engineering, who came to the United States on January 2, 2011 on a student visa (F-1). He is a native and citizen of Libya. He filed the I-140 petition with the USCIS on his own behalf. He also filed the I-485 application for adjustment of status based on the then pending I-140 petition.

8.     Plaintiff, Naglla Kouni Salem Ghadar, is Dr. Elldakli's spouse, also a Libyan citizen, and who entered together with him on January 2, 2011, as a dependent spouse of the holder of a student visa (F-2). Plaintiff Ghadar filed her I-485, application for permanent residency with the USCIS based on the I-140 petition filed by Dr. Elldakli.

9.     Plaintiffs Hadil, Ranim, and Taha Fathi El Elldakli, are children of Dr. and Mrs. Elldakli, who are also natives and citizens of Libya, and who also entered the United States with their parents on January 2, 2011 on dependent F-2 visas. They also filed their individual applications for permanent residency with the USCIS based on the I-140 petition filed by Dr. Elldakli.

10.     Defendant Merrick Garland is the Attorney General of the United States, sued in his official capacity. As Attorney General, Defendant Garland is responsible for the administration and enforcement of the immigration laws of the United States.

11.     Defendant U.S. Department of Homeland Security ("DHS") is the parent agency of U.S. Citizenship and Immigration Services.

12.     Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of DHS. As the Secretary, Mr. Mayorkas is responsible for the administration and enforcement of the immigration laws of the United States.

13.     Defendant United States Citizenship and Immigration Services ("USCIS") is the division of DHS charged with adjudicating non-immigrant visa applications.

14.     Defendant, Ur M. Jaddou, is sued in her official capacity as Director of the USCIS. In this position, Ms. Jaddou is responsible for the overall administration of USCIS and the implementation of the immigration laws of the United States.

15.     Defendant, Gregory A. Richardson, is the Director of the USCIS Texas Service Center ("TSC") which denied Plaintiff's non-immigrant visa application. He is sued in his official capacity. As Director, Mr. Richardson is responsible for overall administration of the USCIS TSC and the decisions that are issued.

16.     Defendant, Wallace L Carroll, is the Houston Field Office Director that granted and later sent a notice of intent to rescind the lawful permanent resident status of Petitioner and his family. He is sued in his official capacity.

5

### III.   JURISDICTION AND VENUE

17.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act). The Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* applies to this lawsuit.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), because this is a civil action in which a defendant is an agency of the United States, and the Plaintiffs reside in this judicial district.

### IV.   STATUTORY AND REGULATORY BACKGROUND

19.    8 U.S.C. § 1153(b)(2)(A) (Section 203(b)(2)(A) of the Immigration and Nationality Act ("INA")) makes immigrant visas available to "qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who, because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States." Such individuals may qualify for an immigrant visa only if their "services in the sciences, arts, professions, or business are sought by an employer in the United States."

20.    Before hiring a foreign national under this immigrant classification, an employer must first obtain a permanent labor certification from the United States Department of Labor ("DOL") under 8 U.S.C. § 1182(a)(5)(A)(i), *see also* 8 C.F.R. § 204.5(k)(4)(i), which demonstrates that DOL has determined that there are not

sufficient workers who are able, willing, qualified, and available at the place where the alien is to perform such skilled or unskilled labor, and the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

21.    However, under § 1153(b)(2)(B), the requirement that the beneficiary's services be sought by a U.S. employer, and the requirements of a labor certification may be waived. In pertinent part, subparagraph (B) states that the Secretary of Homeland Security "may, when the [Secretary] deems it to be in the national interest, waive the requirements of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States."

22.    Thus, the USCIS may grant a national interest waiver ("NIW") as a matter of discretion if the petitioner satisfies both subsections (A) and (B), i.e., requirement of an advanced degree or qualification as an individual of exceptional ability, and a showing that it would be in the national interest to waive the "job offer" requirement under subparagraph (A).

23.    In *Matter of Dhanasar*, 26 I&N Dec. 884 (AAO 2016), the USCIS Administrative Appeals Office ("AAO") established the analytical framework to adjudicate NIW cases. Under this framework (and after eligibility under § 1153(b)(2)(A) has been established):

> USCIS may grant a national interest waiver if the petitioner demonstrates by a preponderance of the evidence: (1) that the foreign

national's proposed endeavor has both substantial merit and national importance; (2) that the foreign national is well positioned to advance the proposed endeavor; and (3) that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. If these three elements are satisfied, USCIS may approve the national interest waiver as a matter of discretion.

*Id*. at 889.

24.     The first prong of this framework, "substantial merit and national importance," focuses on "the specific endeavor that the foreign national proposes to undertake." *Id*. The endeavor's merit may be demonstrated in a wide range of areas, and although the potential to create significant economic impact is favorable, it is not required since "an endeavor's merit may be established *without* immediate or quantifiable economic impact." *Id*. (emphasis added). As an example, *Dhanasar* states: "**endeavors related to research, pure science, and the furtherance of human knowledge may qualify, whether or not the potential accomplishments in those fields are likely to translate into economic benefits for the United States**." *Id*. (emphasis added).

25.     The "national importance" requirement looks to the endeavor's "potential prospective impact" and is not evaluated solely in geographic terms but rather it is evaluated for its "broader implications." *Id*. "An undertaking may have national importance for example, because it has national or even global implications within a particular field, **such as those resulting from certain improved manufacturing processes or medical advances.**" *Id*. (emphasis added).

8

26.     The second prong requires a foreign national to show whether he is "well positioned to advance the proposed endeavor." *Id*. at 890. This includes the individual's "education, skills, knowledge and record of success in related or similar efforts; a model or plan for future activities; any progress towards achieving the proposed endeavor; and the interest of potential customers, users, investors, or other relevant entities or individuals." *Id*. However, petitioners are <u>not</u> required "to demonstrate that their endeavors are more likely than not to ultimately succeed." *Dhanasar* explains:

> "We recognize that forecasting feasibility or future success may present challenges to petitioners and USCIS officers, and that many innovations and entrepreneurial endeavors may ultimately fail, in whole or in part, despite an intelligent plan and competent execution."

27.     The third prong requires the petitioner to demonstrate that, "on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification." *Id*. There is no requirement for "a showing of harm to the national interest or a comparison against U.S. workers in the petitioner's field." *Id*. at 891.

28.     The evidentiary standard applied to these applications and petitions is the preponderance standard. *See* 8 U.S.C. § 1361, 8 C.F.R. § 103.2(b), and *Matter of Chawathe*, 25 I. & N. Dec. 369 (AAO 2010); *see also* 8 C.F.R. § 103.3(c) (binding DHS employees to follow Precedent Decisions issued by agency). Under this

standard, the agency considers "not only the quantity, but also the quality (including relevance, probative value, and credibility) of the evidence." *Id*. at 376.

## V.   STANDARD OF REVIEW

29.   Under the APA, the administrative record is reviewed to determine whether the challenged action is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. *Harris v. U.S.*, 19 F.3d 1090, 1095– 1096 (5th Cir.1994); *see* 5 U.S.C. § 706(2)(A). The court will examine the administrative record to ensure that the agency's decision "was based on a consideration of the relevant factors" and that the decision was not "a clear error." *Republic of Transkei v. INS*, 923 F.2d 175, 177 (D.C. Cir. 1991) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

30.   A reviewing court should not overturn an agency's findings simply because alternative findings could be supported by substantial evidence from the same record. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices.'" *Id*.

(internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir.1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir.1973)).

## VI.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

31.    Plaintiffs have exhausted all administrative remedies. There are no further administrative remedies that the Plaintiffs are required to seek.

## VII.   FACTUAL ALLEGATIONS

USCIS ignored substantial evidence in the record to arbitrarily deny Dr. Elldakli's I-140 Petition

32.    On December 14, 2017, Dr. Elldakli filed an I-140 self-petition for NIW, showing that his innovative research in Artificial Lift Technology had substantially improved oil production and reduced operation costs, and therefore, it was in the national interest to waive the labor certification requirement. *See* Exhibit A, Petition Cover Letter and Related Filings in Support, including response to request for more evidence.

33.    In support of his petition, Dr. Elldakli submitted, *inter alia*, proof of his attainment of two masters and a PhD in Petroleum Engineering from Texas Tech University; several publications in important, peer-reviewed national and international journals about his original scientific contribution in petroleum engineering; a number of citations to his work by others in his field—both nationally and internationally; and fifteen (15) letters of support from his colleagues and

11

mentors who are themselves at the top of their field who attested to his knowledge and his contribution in the field of artificial lift technology in the oil and gas industry. *See id*.

34.     Dr. Elldakli argued and presented evidence of the fact that his research into the gas lift system, and specifically into gas lift valve design, has solved some of the most pressing problems with the gas lift design currently in use in the field. The petition showed that producing and lifting oil and gas economically has remained the most daunting phase of unconventional oil and gas development because of high production decline of 40-80% just within the first year. Oil and gas wells that cannot produce liquids to surface under their own pressure require lift technologies to enable production, and almost all require lift assistance sooner or later. Gas lift technology along with rod pump, and electric submersible pump, are the most common methods of providing artificial lift to the wells. According to the Society of Petroleum Engineers—the largest global organization of professionals in the oil and gas industry—among the two million oil wells currently in operation worldwide, more than one million use some form of artificial lift. In the U.S., 96% of oil wells require artificial lift from the very beginning. Dr. Elldakli presented such evidence that showed that his research into artificial lift technology was unquestionably an area of substantial merit. Defendant USCIS agreed.

12

35.     In a final decision issued on September 4, 2019, USCIS agreed that Dr. Elldakli's proposed endeavor had substantial merit but that somehow it did *not* have national importance. Exhibit B, Denial of I-140 Petition. As instructed by *Dhanasar*, in determining whether a proposed endeavor has national importance, it's "potential prospective impact" is considered. 26 I&N Dec. at 889. As an example, *Dhanasar* states that if an undertaking has "national or even global implications within a particular field, such as those resulting from certain improved manufacturing processes or medical advances," then that undertaking may be of national importance. *Id*.

36.     Experts in the field of oil and gas in the U.S. who wrote support letters attested to how Dr. Elldakli's research and development of new gas lift valve design had real-world implications because his invention directly translated into significant improvement of artificial lift technology. And because artificial lift technology is required for almost all unconventional extraction method for oil and gas in the U.S., the national importance of Dr. Elldakli's work was clearly evident. *See* Exhibit A. Furthermore, his work had already been cited by national and international scholars from Finland, China, and Canada, which demonstrated the "global implications" that *Dhanasar* imagined would be considered to be of national importance.

37.    In the denial, USCIS erroneously required Dr. Elldakli to show evidence of his endeavor's success—a requirement that *Dhanasar* specifically states is <u>not</u> required to be shown. The denial states:

> "the petitioner did not submit independent and objective evidence to demonstrate **that his design changes have actually benefitted the U.S. oil and gas market**." Exhibit B at 4 (emphasis added).

*Dhanasar* explicitly states that because "many innovations and entrepreneurial endeavors may ultimately fail, in whole or in part, despite an intelligent plan and competent execution[,] we do **<u>not</u>** [] require petitioners to demonstrate that their endeavors are more likely than not to ultimately succeed." 26 I&N Dec. at 890 (emphasis added).

38.    Citing to a specific support letter by Dr. Talal D. Gamadi, a faculty member of the Bob L. Herd Dept. of Petroleum Engineering at Texas Tech University, USCIS states that "the record is devoid of evidence to show that any institutions or organizations have implemented the petitioner's beveled seat or that any of his work has influenced field on at least a national level." Exhibit B at 4. However, Dr. Gamadi's letter clearly shows that the exact opposite is true:

> "The gas lift valve seat has not been developed for decades, and Dr. Elldakli was the first researcher to develop the beveled seat, which led to significant improvement in the oil production over the current design. Dr. Elldakli built a very sophisticated experimental equipment at the Anadarko Unconventional Technology Research Center located at Texas Tech University. *This setup is currently being used to advance further research in the area by other graduate students in the research*

14

*center*." *See* Exhibit A, Letter by Dr. Talal D. Gamadi (emphasis added).

39.     USCIS in its denial simultaneously finds that Dr. Elldakli's research does *and* does not have national importance. On page 3, the denial states that Dr. Elldakli submitted "insufficient evidence to establish that his proposed endeavor meets [the] requirement [that it be of national importance]." Exhibit B. On page 5, it states, "while USCIS finds that the petitioner's research has national importance, his teaching activities would not qualify him for a national interest waiver, unless [he] could demonstrate that his teaching activities and petroleum engineering activities would impact the field of petroleum engineering more broadly[.]" Several support letters submitted into evidence showed that, in fact, Dr. Elldakli's research had already influenced and shown promise to significantly impact the oil and gas industry.  For example, Dr. Mohamed Awal, a professor of Petroleum Engineering at the Dept. of Chemical and Petroleum Engineering at the American University of Ras Al Khaimah in the UAE, who led several large projects sponsored by Saudi Aramco—world's largest oil and gas company—at the King Fahd University of Petroleum & Minerals, stated the following in his support letter for Dr. Elldakli:

> It is important to judge the significance of Dr. Elldakli's new [Gas Lift Valve (GLV)] designs in the context of US and worldwide oil production scenarios. Since 2015, the US has become number one oil producer in the world by virtue of two technologies employed to extract oil from shale rock formations (Permian Basin, Bakken Field, etc.): hydraulic fracturing and horizontal well drilling. Oil production from shale formations requires artificial lift methods. The two artificial lift

methods (ALM) currently employed in these oilfields are: beam pump and electrical submersible pump. However, due to high percentage of very salty water (corrosive) that also flows with oil, US oil companies are recently adopting gas-lift method over the traditional two methods. In that scenario, the importance of improved GLV designs that Dr. Elldakli has accomplished is a boon to the oil industry. In addition to new improved design of GLV, excess natural gas is also produced from the same shale rock formations. Since market demand of natural gas is low, Dr. Elldakli's new GLV and further design improvement expected of his continued research and development works in the coming years will go a long way toward sustaining US lead in oil production. The US energy interest also lies in the giant oilfields of the Middle East, which are aging and therefore, the deployment of artificial lift method will exponentially increase in the coming years.

Exhibit A, Letter by Dr. Mohamed Awal.

Thus, the USCIS reached an erroneous conclusion, making several factual errors in its decision and largely ignoring the significant evidence which showed that Dr. Elldakli's proposed endeavor was of national importance and that because of his demonstrate success, he was well positioned to advance the proposed endeavor.

40.    USCIS also found that Dr. Elldakli did not meet the second or the third prongs of the *Dhanasar* framework, finding that there was no evidence that he is "well positioned to advance the proposed endeavor," or that "on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification." *Dhanasar*, 26 I&N Dec. at 890. While citing to Dr. Elldakli's submitted evidence of his academic achievements which included his two master's degrees and a PhD, experience in the field of over two decades, several scholarship awards, grants, several publications in peer-reviewed journals, and a

16

patent application, USCIS still found that there was <u>no evidence</u> that his past work "affected the field of engineering" or that he was "otherwise integral to advancing mechanical engineering research, innovations, products, techniques, etc. that have garnered significant interest in his industry."

41.    Dr. Elldakli timely filed an I-290B appeal of the USCIS denial. However, the Administrative Appeals Office (AAO) dismissed the appeal. *See* Exhibit C, AAO Denial.

42.    The AAO did find that Dr. Elldakli's proposed endeavor was of substantial merit and national importance. Exhibit C at 3. However, the AAO found that Dr. Elldakli did not satisfy the second prong, i.e., that he was well-positioned to advance his proposed endeavor. AAO found it unnecessary to even go into the third prong of whether on balance, it would be in the national interest to waive the requirements for a labor certification for Dr. Elldakli.

43.    This was an erroneous finding since the record contained evidence that Dr. Elldakli's research into gas lift valve design had already demonstrated a record of success. Because of the nature of his work, any real world impact in the sense that his gas valve design being actually manufactured and implemented for use by oil and gas companies would take several years. Moreover, oil and gas machinery weigh several tons, are employed at distant shorelines or embedded within deep sea. To employ a new gas valve design on these machinery—a design that has not changed

17

in more than four decades—would certainly involve tremendous costs. Optimization of a new design and testing whether it will work in the real world is done in a laboratory setting or within software that is designed to produce reliable data of success rate.  As Dr. Awal stated in his support letter:

> "Mr. Elldakli replaced the forty-year-old sharp-edged valve design with a substantially better performing beveled seat design. The various design parameters of the new design were optimized by employing state of the art sophisticated design software, known as computational fluid dynamics (CFD). The use of CFD demonstrates Mr. Elldakli's deep understanding of modern design paradigm, because CFD enables not only explore detailed insight of complicated supersonic/subsonic flow behavior of gas in the GLV and other constriction, it also eliminates *costly and time consuming physical prototype* involving combinatorial explosion of design parameters."

Exhibit A, Letter from Dr. Mohamed Awal (emphasis added).

Dr. Elldakli also provided letter from Dr. Mohamed Y. Soliman who has authored or coauthored more than 200 papers and who holds 32 patents with 10 additional patents pending. Dr. Soliman, also a fellow of the National Academy of Inventors (NAI), mentioned in his letter:

> "In addition to the experimental work that [Dr. Elldakli] designed, and ran, he designed a numerical simulation approach. Using Computational Fluid Dynamic software (CFD), he went further by iterating between experimental and numerical simulation to achieve an optimum Gas Lift Valve design. This optimum design was manufactured, and it is being tested."

Exhibit A, Letter from Dr. Mohamed Y. Soliman.

44.     Disregarding significant evidence in the record, USCIS and AAO reached a conclusion that Dr. Elldakli did not meet the *Dhanasar* prongs to be granted a national interest waiver.

> USCIS granted Dr. Elldakli and his family's I-485, applications for permanent residence, and then issued a revocation notice more than a year later

45.     Dr. Elldakli and his family members, all the named plaintiffs in this action, submitted their Form I-485, application for adjustment of status to lawful permanent residence, on August 21, 2018 based on the then-pending I-140 petition. Exhibit D, Approval notices for I-485 applications. They were interviewed by a USCIS officer in connection with this application who subsequently approved the applications on March 28, 2019 and issued their green cards. *See* Exhibit E, Copy of green cards. At this time, USCIS had in its possession the complete record for Dr. Elldakli's I-140 petition including the response to a request for evidence which was completed on or about October 28, 2018. *See* Exhibit A.

46.     On May 12, 2020, USCIS Houston Field Office issued a notice of intent to rescind the permanent resident status of all plaintiffs and afforded them a thirty (30) day notice to answer in writing under oath setting forth reasons why such recission should not be made. Dr. Elldakli did so and filed a response on or about June 9, 2020. *See* Exhibit F, Notice of Intent to Rescind Permanent Resident Status and Response. There has not been a final adjudication on this matter; therefore, as of today, the plaintiffs' permanent resident status remains intact.

47.     Along with this Complaint, Plaintiffs also seek a temporary restraining order (TRO) against the USCIS to prevent it from issuing a final revocation of Plaintiffs' lawful permanent resident status. A separate emergency application for TRO is being filed along with this Complaint.

## VIII.  CAUSE OF ACTION:
## COUNT I – REVIEW UNDER THE APA

48.     We incorporate by reference ¶¶ 1-45 above.

49.     We also incorporate by reference the factual allegations and arguments made in Plaintiffs' motion for a temporary restraining order as if fully stated herein. *See* ECF # 2, Plaintiffs' Emergency Application for a Temporary Restraining Order.

50.     Plaintiffs seek review of USCIS's decision to deny the I-140-NIW petition under the Administrative Procedure Act. The denial of the petition is a "final agency action." 5 U.S.C. § 704. The decision was arbitrary, capricious, and an abuse of discretion, and "without observance of procedure required by law," as explained above. *See* 5 U.S.C. § 706(2)(D). USCIS abused its discretion and violated the law in denying Plaintiff's petition and by issuing a notice of intent to rescind an already granted application for lawful permanent residence.

51.     In denying the petition, USCIS failed to consider all the evidence contained in the record and performed an incomplete and erroneous analysis of the evidence that it did consider.

52.    The evidence demonstrated that Dr. Elldakli had a record of past success where the new design for gas lift valves had been successfully optimized and tested in a laboratory setting using computer simulation software. The record also contained evidence that his research was already being utilized by scholars internationally in three countries who had cited to his publications. However, USCIS required him to demonstrate that his design was "implemented in the field, representing a record of success or progress"—a costly measure that might take several years and more importantly, a standard higher than that prescribed under *Dhanasar*.

53.    According to *Dhanasar*, a record of past success can be an indication that the applicant is well positioned to advance the proposed endeavor, but it is one of the factors, not the only factor. 26 I&N Dec. at 890. In addition to a record of past success, "a model or plan for future activities; any progress towards achieving the proposed endeavor; and the interest of potential customers, users, investors, or other relevant entities or individuals" may also be considered. *Id.* Such evidence of a plan for future collaborations with a major oil and gas company, Schlumberger Technical Corporation, was included with the petition that Dr. Elldakli filed. *See* Exhibit A, Letter of Support by Salem Abisa, Global Category Manager at Schlumberger. Additionally, the scholarship awards and grants he received in order to continue his

work at the university for several consecutive years also indicated a record of success and importance of his work.

54.     Therefore, USCIS, in violation of the APA, erroneously denied Dr. Elldakli's petition.  This was an arbitrary and capricious denial unsupported by substantial evidence as required under 5 U.S.C. § 706(2).

55.     USCIS also acted arbitrarily when it approved the Plaintiffs' I-485 applications before granting the underlying basis for it, i.e., the I-140 petition. In doing so, USCIS subjected Plaintiffs to severe consequences that they otherwise would not have been subjected to had they kept the applications pending until the final adjudication of the I-140 petition. Instead of being in a period of authorized stay, which would only terminate upon a final denial of the I-485 applications, Defendants erroneously granted Plaintiffs LPR status. It now seeks to rescind the status which would render Plaintiffs' status void *ab initio* resulting in them to have been in an unlawful status and accruing unlawful presence for over two years, and being subjected to a ten-year bar from reentering the U.S. Therefore, this Court should find this action by USCIS unlawful and order them to reopen the I-485 applications, even if the Court does not ultimately find that Plaintiff Elldakli's I-140 petition should not have been denied.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Honorable Court grant the following relief:

(1)    Assume jurisdiction over this matter and review the USCIS's decision to deny Plaintiff's I-140 petition and the decision to grant the I-485 applications without first adjudicating the I-140;

(2)    Declare that Defendants' determination that Dr. Elldakli did not meet the requirements under *Matter of Dhanasar* to find that he is eligible for NIW was arbitrary, capricious, and not in accordance with the law;

(3)    Vacate the denial of the I-140 petition and remand this matter to the USCIS with instructions that within ten (10) days of the date of the Court's order, they approve this petition;

(4)    Order that Defendants be enjoined from rescinding the lawful permanent resident status already granted to the Plaintiffs;

(5)    Order the Defendants to reopen the I-485 applications in the event that this Court finds the I-140 petition was not denied in error;

(6)    Award reasonable attorneys' fees and costs pursuant to the EAJA, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

(7)    Grant such other relief as the Court deems just, equitable and proper.

DATED: October 8, 2021                    Respectfully submitted,

                                          /s/ Merina Shakya
                                          _____

                                          Merina Shakya
                                          Attorney-in-Charge

State Bar # 24089912
SDT # 3206704
Quan Law Group, PLLC
5444 Westheimer Rd., Ste. 1700
Houston, TX 77056
Ph. 713-625-9200
Fax. 713-625-9222